215 So.2d 459

**Dewitt DAWSON**

v.

**STATE.**

**8 Div. 157.**

Court of Appeals of Alabama.

Aug. 27, 1968.

Rehearing Denied Oct. 8, 1968.

Jas. H. Tompkins, Tuscumbia, for appellant.

MacDonald Gallion, Atty. Gen., and Robt. F. Miller, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

This appellant entered a plea of guilty to an indictment charging him with forgery and was sentenced to a year and a day in the penitentiary.

Thereafter he filed a petition captioned a motion for a new trial in which he sought

to vacate the judgment, with leave to withdraw the guilty plea, and prayed that he be granted a trial.

It is alleged that the crime for which accused has been convicted was committed by another person who has since signed a confession of guilt; that this is newly discovered evidence which was not available to petitioner and that he could not by the exercise of ordinary diligence procure the testimony of the alleged confessor at the time set for trial.

At the hearing on the motion one James Edward Bell testified he is a first cousin to Dewitt Dawson; that he heard of Dawson's arrest for forging a check at the Liberty Super Market in Sheffield a short time after it occurred; that Bell purchased the check in question, along with three other checks, in Sheffield from a man he had never seen before, paying him $100.00 for all the checks; that he obtained the money to pay for the checks from the sale of beer; that he thinks he bought a carton of cigarettes but didn't remember what brand, at the Liberty Super Market and cashed the check for $97.84; that he cashed two other checks and burned the fourth; that after he heard Dawson had been put in jail he told two boys, who picked him up when he was hitch-hiking, that he was guilty of the offense for which Dawson had been arrested; that after Dawson had entered a plea of guilty he went to the jail and told Dawson he hated to see him sent off for something he didn't do. He asked Dawson to suggest the names of lawyers and asked about a certain lawyer in Russellville and said he would like to talk with him. Dawson's wife was there at the jail to visit him and witness asked her to take him to Russellville. He signed a statement in the lawyer's office on August 11th in which he claimed he committed this offense. He is willing to plead guilty to the charge. Dewitt Dawson was not with him on any of the occasions when he passed the bad checks.

On cross examination Bell stated that before he signed the confession the two boys were the only persons he told he had cashed the check, and he did not tell Dawson until after he signed it. He never told Mrs. Dawson his purpose in going to Russellville to see the lawyer. The witness had stated on direct examination that he was wearing a white sport coat when he cashed the check at Liberty Super Market and that he later burned it. He stated it was a woman who cashed the check at Liberty Super Market. He could not remember whether it was afternoon or evening. On cross examination he couldn't remember on which of the check cashing occasions he wore the coat and could not remember whether it was a man or woman who cashed the check.

Bell testified he could not read; that he never endorsed either of them. The name W. B. Dickerson, Jr., was already on the checks when he received them. He did not remember what he bought when he cashed the other checks at Kwik Check and a men's clothing store in Florence.

In response to questions from the court the witness stated he spent the night before the hearing at the home of Dawson's brother.

Mr. Roger H. Bedford, one of the attorneys representing Dawson on this motion, testified Bell signed the confession in his office in Russellville on August 11, 1967. This was the first time he had ever seen Bell. Dawson called witness on August 10th complaining about his sentence and asked if witness could represent him in that matter. Witness told him he had three attorneys and he knew of no way he could help him. The next day Dawson called again and informed him that his wife and Bell were on their way to Russellville to see him; that Bell wanted to talk with him and intimated he believed Bell had passed the checks but did not say Bell would sign a confession. When Bell came into his office he said he wanted to confess to the crimes Dawson was charged with and mentioned two checks in Lauderdale County and one in Colbert County.

Dewitt Dawson testified he entered a plea of guilty to the charge of forgery on August 7, 1967. At that time he had no knowledge of the fact that James Bell would confess nor any information that would cause him to believe Bell had committed the offense and did not know how he could have presented the defense of a confession on Bell's part; that he told one of his attorneys he suspected James Bell. He did not know for sure that James Bell passed the check but he had good reason for believing Bell did it, and even if he had known of the facts contained in the confession he had no knowledge that Bell would sign a confession or testify he committed the offense.

On cross examination appellant testified he didn't think he told either of his lawyers James Bell cashed the check. He told them he could get a picture of the man who did it and they could show it to the woman who identified Dawson as the person who passed the check. Bell had told Lovell and Kilpatrick, friends of witness, and other parties that he cashed the checks. Lovell and Kilpatrick told him of the conversation with Bell after Dawson plead guilty. Appellant's brother, Homer Gene, told him several months before his case was set for trial that Bell said he was the guilty party but witness never used the name James Bell to any of his attorneys. It was after he was arrested and was on bond that Homer Gene told him about it, but he never asked Bell about it and did not ask anyone else to talk with Bell about it. He and James Bell were first cousins and had always been good friends.

Dawson further testified he was on parole from a grand larceny conviction when he was arrested on the present charge. He had three employed lawyers of his own choosing to represent him. They were present in court and he advised with them the day he entered the plea of guilty.

On redirect examination appellant testified he entered his guilty plea because he knew if he was convicted after a trial his sentence would be for longer than a year and a day. Also, one of his attorneys told him the sentence would run concurrently with the one he already had. The court then asked witness if he did not remember that he was asked, "How do you plead;" that defendant answered, "I plead guilty" and before the court could say anything further one of the attorneys asked, "Sentence to begin immediately?" The witness answered "Yes." The court continued: "And I said 'wait a minute, that wasn't the agreement I had,' and you all went over there and talked. Is that right?" The witness said "A. Yes, sir, we went in there and talked and you come in there and got us and told us—" After further discussion, the record shows the following:

"By the Court: See if this is right. I said that when the minutes was written up—when I wrote it on the docket sheet, the order would read 'Sentence is to begin immediately.' That would mean it would still run at the end of the other term. Didn't I say that, for the record that it would not be a concurrent sentence—would not be?"

"A. I believe you said that but you did say that it would start immediately and he told me that it would start, as far as he knowed—I asked Mr. Ben Allen about it—he was here in the courtroom—and he told me it would start immediately. I don't know—"

"By the Court: Well, did you have any agreement like that with the District Attorney or Mr. Smith or myself about it being a concurrent sentence or anything?"

"A. No, sir.

\* \* \* \* \* \*

"By the Court: Well, did anybody tell you that I agreed with such a thing as that?

"A. No, sir."

The witness testified his lawyers did not tell him the sentence would run concurrently but one of them said it would start

immediately; that he thought it meant he would begin to get credit for the time on the day he was sentenced. The trial judge again asked if the witness remembered that he explained at length the meaning of a concurrent sentence and that the term "to be executed immediately" was contained in every sentence and that this sentence would begin at the end of the sentence he was then serving. The witness answered "Yes, sir."

Mr. Bryce Graham, one of the attorneys who represented appellant when he plead guilty testified that Dawson told him he was not guilty of the forgery and knew nothing about it. He mentioned on more that one occasion that he might be able to get the picture of a man that was supposed to have cashed the checks or the person the parties were identifying, but he never brought the picture and never called the name of the person he was referring to. He did not recall that Dawson ever told him that his brother, Homer Gene, had heard James Bell say he had committed this offense. Defendant was trying to work out something whereby the case or cases in Lauderdale County and the present case in Colbert County would be disposed of at the same time and there was a tentative agreement to plead guilty and take a two year sentence if that could be done, but there was some confusion about the sentences in the two counties running concurrently and the matters were not disposed of. There was some discussion between Mr. Dawson and his attorneys about the meaning of the term "executed immediately" but he thought the matter had been cleared up. The trial judge explained at length that the agreement was that the sentence was to begin after the completion of the sentence defendant was then serving and the witness understood it and Mr. Beasley, one of defendant's attorneys, fully explained the matter to defendant

Mr. Murray Beasley, a practicing attorney, testified he was present and representing defendant when he entered his plea of guilty to the offense of forgery on Au-

gust 7th, but that he was not representing him on the hearing of the present motion. He stated he was called to the county jail and conferred with defendant there. Defendant said he had this forgery case in Colbert County and two cases in Lauderdale County. He offered witness $500.00 if he could get the sentences in these cases to run concurrently. Dawson did not discuss the facts of the case. Witness talked with the District Attorney and the trial judge and they would not agree to this proposition. The attorneys explained to Dawson in the witness room that the sentences in the two counties would not run concurrently but they would still try to get the sentences in the cases in Lauderdale to run concurrently, and there was mention of trying to get a parole for defendant. The witness stated: "At no time did I have any impression that Dewitt didn't know that this case would not run concurrent because Judge Deloney, as a matter of fact, gave about a five minutes speech about it here in open court in the presence of, I guess, a hundred people or more. If there was a misunderstanding it was a layman's point of view."

On cross examination the witness testified he explained to defendant that his sentence was to be for a year and a day and that it would not be combined or merged with any other sentence, and in his judgment the defendant knew this.

Mr. Ben Allen testified he was present in court when defendant entered his plea of guilty and he heard the trial judge explain the plea to him. Almost immediately afterward Dawson asked him, "What does the Judge mean by 'Sentence to begin immediately,' and I said 'Well, that means, I think, at the termination of the sentence that you are presently building.' He said 'Well, I didn't understand it that way.' He said 'I think it means it is going to run concurrently.' I said 'No, that is not my understanding, Dewitt. The way I understood the Judge, it was going to start after the expiration of the sentence you are now on.'"

█ It is within the sound discretion of the trial court to refuse withdrawal of a plea of guilty, and the denial of the motion will not be disturbed except where an abuse of judicial discretion is shown. Malone v. State, 41 Ala.App. 230, 132 So.2d 749, cert. den.

█ The proposed evidence must not only be newly discovered, but also not discoverable by reasonable diligence, and must be such as will probably change the result if the plea is withdrawn and a trial granted. Shaneyfelt v. State, 40 Ala.App. 13, 109 So.2d 146, affirmed 268 Ala. 520, 109 So. 2d 149.

The defendant's own testimony shows his knowledge of Bell's statement to others that he was guilty of passing forged checks and shows a lack of requisite diligence on his part.

It is said in 24 C.J.S. Criminal Law § 1454, at page 182:

"Evidence, not known to accused at his trial, which will tend to prove that the crime of which he has been convicted was committed by another person, may be ground for a new trial. A new trial on this ground rests in the sound discretion of the trial court, and depends largely on the credibility of the new evidence."

In Taylor v. State, 180 Tenn. 62, 171 S.W. 2d 403, the court held that evidence, although not newly discovered in the usual sense of the term, warrants the granting of a new trial on the ground of newly discovered evidence if its availability is newly discovered.

In Huckabee et al. v. State, 174 Ark. 859, 296 S.W. 716, the court held that where defendants on the day after conviction for possessing a still and while court was still in session, presented a motion for a new trial on the ground of newly discovered evidence in that since their conviction defendants had discovered that one Hansford would testify that he and another, and not defendants were the persons at the still when officers testified defendants were there and defendants had nothing whatever to do with the still, with the affidavit of Hansford attached to the motion and Hansford appeared in open court and testified to the same effect, the denial of the motion was an abuse of discretion, the diligence rule not being applicable in such case. The court commented; "While appellants undoubtedly had just grounds to believe that Hansford and Bozemore were the guilty parties, yet it was not within their power to compel either to admit his guilt." In the foregoing cases, as well as those cited by appellant's counsel in brief, the conviction was had after a plea of not guilty and a trial on the merits.

█ In the instant case the defendant, represented by counsel of his own choosing, entered a voluntary plea of guilty. The defendant testified that before pleading guilty he had knowledge of Bell's statements to others that he was guilty of passing the forged checks and that he neglected to furnish this information to his attorneys. The trial judge saw and heard the witnesses testifying on the motion to set aside the judgment. The credibility of the alleged newly discovered evidence as well as the question of reasonable diligence were matters for his determination. We find no abuse of the court's discretion.

The judgment is affirmed.

Affirmed.