564 P.2d 935

**STATE of Arizona, Appellee,**

**v.**

**Leonard Lester McFORD, II, Appellant.**

**Nos. 1 CA–CR 2055 and 1 CA–CR 2440–PR.**

Court of Appeals of Arizona,
Division 1,
Department C.

March 24, 1977.

Rehearing Denied April 25, 1977.

Review Denied May 24, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Division, Lynn Hamilton, Asst. Atty. Gen., Phoenix, and J. Michael Flournoy, Coconino County Atty. by William A. Flick, Deputy County Atty., Flagstaff, for appellee.

Aspey, Watkins & Diesel by Harold L. Watkins, Flagstaff, for appellant.

FROEB, Chief Judge.

The main issue in this case is whether the State has performed its promises made to appellant which were incorporated into a plea agreement.

The crime occurred on August 18, 1975, near Flagstaff, Arizona. The appellant, Leonard McFord, and a companion, William McCallister, stopped their car at a service station for oil. McCallister pulled a gun on the service station attendant, Robert Baker, and robbed him of approximately $35.00. Baker was then forced into the car driven by McFord and taken to a remote area where he was shot six times and killed by McCallister. Both McCallister and McFord were charged with first-degree murder. Pursuant to a written plea agreement, McCallister pled guilty to first-degree murder and was sentenced to life imprisonment. One of the terms of the plea agreement was that McCallister would be assured of transfer to an out-of-state prison to serve his sentence. This was carried out. McFord pled guilty to second-degree murder pursuant to a written plea agreement, the relevant details of which are considered in this opinion, and was sentenced to not less than 15 nor more than 20 years "in the Arizona State Prison or such other penal institution as might be arranged for by the Arizona Department of Corrections." McFord contends in this review that he too should be sent out of state to serve his sentence instead of the state prison at Florence, Arizona, where he is presently incarcerated. Failing this, he contends his sentence and plea should be set aside.

Fears for his personal safety, stemming from being an informer for the State in other crimes, prompted McFord to seek an agreement that he serve his sentence out of state. Unlike the firm promise made by the State to McCallister concerning out-of-state transfer, the plea agreement made with McFord promised only that the State would try to persuade the Arizona Department of Corrections to send him out of state. The precise wording of the pertinent part of this agreement is:

The State of Arizona will endeavor to pursuade [sic] the Department of Corrections to allow Leonard Lester McFord to serve his sentence hereunder in an institution other than the Arizona State Prison. In this regard, the Coconino County Attorney's Office will write such letters to and make personal appearances before the Department of Corrections as may be necessary to attempt to accomplish this end.

McFord filed a timely notice of appeal to this court from the judgment of conviction and sentence. Thereafter, following his transfer to the state prison at Florence, he filed a petition for writ of habeas corpus, seeking an order of the Coconino County Superior Court that the State be required to specifically perform the terms of the plea agreement and that he be removed from

**248**

the state prison and turned over to a facility outside of the State of Arizona. Alternatively, he requested that he be allowed to withdraw his plea of guilty. A hearing on the petition for writ of habeas corpus was held on August 3, 1976, before Honorable J. Thomas Brooks, Judge of the Coconino County Superior Court. At the hearing the court elected to treat the petition as seeking post-conviction relief, pursuant to Rule 32.3 of the Rules of Criminal Procedure. Considerable testimony was taken at this hearing as to whether the terms of the plea agreement had been carried out. Judge Brooks denied relief both as to habeas corpus as well as post-conviction relief. In doing so, the court found that there had been no violation of the plea agreement. On review, we now consolidate the petition for review with the appeal and consider all issues in our decision.

*Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 433 (1971) holds:

> [W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

Was the agreement fulfilled in this case? We think the trial court had sufficient evidence before it to find that it was, although we hereafter state our disapproval of the use of a "best efforts" type of plea agreement in criminal cases.

■ We have already quoted the wording of the agreement as it relates to what "the State of Arizona" agreed to do. It is clear that the reference to "the State of Arizona" must be read to mean the Coconino County Attorney, whose office filed the charges for and on behalf of "the State of Arizona." At the plea proceedings on May 4, 1976, the trial court very thoroughly reviewed this agreement with McFord when he entered his plea of guilty to second-degree murder. The text of the portion referring to what the State of Arizona promised to do was read aloud by the trial judge, who then said:

THE COURT: . . .

My interpretation would be that there is no absolute guarantee that you would serve your sentence outside the State of Arizona, but that any and all reasonable attempt would be made in this regard by the State. Is that your understanding?

THE DEFENDANT: Yes, sir.

THE COURT: In other words, there is no guarantee but all reasonable attempts would be made by the State. Is that your understanding?

THE DEFENDANT: Yes, sir.

■ The evidentiary hearing which took place on August 3, 1976, was initiated by petition for writ of habeas corpus filed by counsel for McFord. The allegations contained therein stated that a good faith effort had not been made by the State of Arizona to comply with the plea agreement. No specific mention was made as to whether the Department of Corrections was either bound under or failed to act in accordance with the agreement. The petition was followed by a handwritten letter addressed by McFord to the trial judge. In the letter, McFord stated several times that he felt the "County" and the "County Attorney" had failed to live up to the agreement. No contention was made that the Department of Corrections had either been bound to act under the agreement or had failed to live up to it. It was not until the hearing began that it became clear that McFord's claim was based not on something that the County Attorney had failed to do, but rather upon the decision of the Department of Corrections to retain McFord as a prisoner in the state prison at Florence. In fact, the hearing began with the statement by the County Attorney that he had been advised by counsel for McFord that the County Attorney's Office had done its part in the plea agreement "and apparently the problem is the Arizona Department of Corrections." Indeed, the evidence at the hearing showed that the County Attorney had made three phone calls and a personal visit to Edward J. Aitken, Chief Parole Officer of the Department of Corrections whose duty it was to handle the transfer of prisoners in and out of state. The degree of the effort

made by the County Attorney is indicated by the following testimony:

MR. FLOURNOY (County Attorney): Now in regard to McFord, there was no such guarantee to your understanding, was there?

MR. AITKEN: That's correct.

MR. FLOURNOY: Did you at all times realize that my office and myself would do all possible to persuade you to transfer Mr. McFord to another state; were you aware of that?

MR. AITKEN: Well aware of it and I was getting to the point where I was tired of you bugging me, frankly.

MR. FLOURNOY: Is there anything else that I could do to persuade you or the Department of Corrections to transfer Mr. McFord to another state?

MR. AITKEN: No, I don't think so.

Thus, the evidence at the hearing related primarily to the participation of the Department of Corrections. The cornerstone to McFord's argument was a telephone conversation involving discussions between the County Attorney, Edward Aitken, counsel for McFord, and, intermittently, with McFord himself, which occurred just prior to the sentencing. McFord contends that Aitken made certain assurances regarding out-of-state transfer which gave him the impression that his transfer was a virtual certainty. He argues that if he had known that his prospects for transfer were not good, he would have withdrawn his plea.

The trial judge did not find this to be the case. The evidence at the hearing from McFord was that he felt the discussions and negotiations "inferred" that he would be sent out of state, particularly since this is what was done with his co-defendant, William McCallister. McFord's counsel, F. M. Aspey, testified that he recalled the telephone conversation and was under the definite impression that a good faith effort was going to be made by the Department of Corrections to transfer McFord out of state. Mr. Aitken testified that he recalled stating in the telephone conversation that the Department of Corrections would make every effort to transfer McFord out of state. In reviewing the testimony as it related to the telephone conversation, we can find nothing in it which would compel the trial court to find that McFord had been misled as to his chances for out-of-state transfer.

In the overall context of whether he has been dealt fairly with under the plea agreement, McFord points to the failure by the Department of Corrections to keep him in the county jail for his interview by the Department of Corrections prior to sending him to the state prison. While there were discussions indicating this was the Department's intention, we find it wholly immaterial to the issue at hand. The evidence shows he was interviewed fully at the state prison concerning out-of-state transfer after his arrival there. McFord also argues that the Department was entertaining changes in its policy concerning prisoner transfer before his sentencing and that he should have been made aware of this. We find no merit to this contention. The evidence shows that prisoner transfer is always limited to available openings out of state and that those openings are filled by the Department according to prisoner evaluation and resulting priorities. McFord's chances for out-of-state transfer were matched against approximately one hundred other prisoners seeking the same thing. There was no showing that the Department refused to weigh his request fairly with all the others they were considering.

In conclusion, McFord clearly understood that no guarantee of out-of-state transfer was made to him when he entered into the plea agreement. The State of Arizona, acting through the County Attorney, did its part to persuade the Department of Corrections to send him out of state. The Department of Corrections promised nothing and offered no false hopes. There is no showing that anything it did was in bad faith. McFord did not get what he hoped for, but he received what he was promised. We therefore affirm the conviction and sentence.

■ In doing so, however, we do not wish to lend our encouragement to plea agreements which need be performed by the

state only by a demonstration of a "good faith effort." It is far more desirable that a plea agreement be cast in definite terms which are susceptible of specific enforcement. It is too difficult for a court to measure intangible efforts to determine if they have been made in good faith and in a way likely to bring about a desired result. They have a potential for being misinterpreted by a defendant at a time when resolution of his difficulties with the law are in need of certainty. The possibilities for disappointment which are present in this type of agreement are naturally great and, as we have seen here, capable of exhausting considerable time and energy of the judicial system in reviewing their performance. They should be avoided by the prosecutor in his effort to reach fair plea bargaining in the criminal process.

Appellant also argues that he is entitled to a new trial based on newly discovered evidence. The alleged new evidence was based on the hearsay testimony of recantations by appellant's accomplice supposedly absolving McFord from culpability in the crime. The accomplice did not testify at the Rule 32 evidentiary hearing as he was confined in prison outside the state. The superior court judge who presided over those proceedings was the same judge who had accepted McFord's guilty plea. In denying the new trial request, the court ruled that there was insufficient evidence to convince him that McFord's plea was not knowingly, voluntarily, and intelligently entered. The trial court also noted that at the time McFord entered his plea he faced the possibility of the accomplice placing all the blame on him and thus a more grievous penalty than that which he received through his guilty plea. Courts look skeptically upon a post-conviction admission of sole guilt by a co-defendant. *State v. Irwin*, 106 Ariz. 536, 479 P.2d 421 (1971); *State v. Ybarra*, 22 Ariz.App. 330, 527 P.2d 107 (1974). The record shows that the testimony upon which McFord bases his new trial demand is not newly discovered. Both McFord and his accomplice were the only two people who knew the facts first hand and, knowing those facts, they both pled guilty. Accordingly, we affirm the trial court's denial of appellant's motion for a new trial on this ground.

Judgment and sentence are affirmed.

JACOBSON, P. J., and OGG, J., concur.