Appellant was convicted of buying, receiving, or concealing stolen property and was sentenced to three years imprisonment in the penitentiary. He was represented by counsel of his choice and at arraignment pleaded not guilty. After sentence was imposed he gave notice of appeal. Trial counsel represents him on this appeal.
Omitting the formal parts the indictment reads as follows:
 "The Grand Jury of said County charge that before the finding of this indictment William Ellison Stamps, whose name to the Grand Jury is otherwise unknown than as stated, did buy, receive, conceal or aid in concealing one Hi-Standard Shadow 12 gauge shotgun, serial number J02193G, of the value of $200.00; the personal property of Charles Douglas *Page 407 
Flanagan, knowing that it was stolen, and not having the intent to restore it to the owner, contrary to law and against the peace and dignity of the State of Alabama."
The evidence presented by the State and that presented by appellant was in sharp conflict. At the conclusion of the State's case appellant moved to exclude the State's evidence on the ground the State failed to make out a prima facie case. This motion was denied by the trial court.
Charles Douglas Flanigan testified that in September of 1978 he owned a High Standard Shadow 12 gauge shotgun, serial Number J02193G, and that he had loaned this gun to his sister-in-law, Bertie Shropshire, who lived at 1040 East Main Street, Centre, Alabama. He stated that the bolt of the shell ejector was missing at the time he loaned the gun and that it also had a scratch right behind the shell ejector. The value of this gun was $200.00. He said this gun was stolen from the home of his sister-in-law on September 17, 1978, and was recovered by the law enforcement officers. He identified State's Exhibit 1 as his shotgun and it was introduced into evidence without objection.
Danny Smith testified that he was an investigator with the District Attorney's Office in Cherokee County and had held this position since October of 1977; that he took part in the investigation of this missing gun and recovered it from one Joe Tierce on October 31, 1978. He stated that a number of weapons had been taken in some burglaries in Cherokee County and in his investigation he learned that Joe Tierce had bought some guns and he went to talk to Joe Tierce and in the course of his investigation recovered some guns and that State's Exhibit No. 1 was one of the guns.
Joe Allen Tierce testified that he received a telephone call from appellant who asked him if he was interested in buying some guns. Joe's brother was present when appellant made the telephone call and Joe talked to his brother, Lester Tierce, and he asked Lester if he thought he could sell the guns at a profit. Lester told Joe he did not know much about guns and did not know if he could make any money on the re-sale of the guns. Shortly after this conversation appellant and Lester drove to Joe's place of business in appellant's pickup truck. Appellant had three guns in the truck and after some negotiation Joe Tierce bought the three guns from appellant for a total of $240.00. Included in the three guns was the shotgun which was owned by Charles Flanigan. The purchase was made on September 23, 1978. The guns were placed in Joe's store located at Pruitt's Fish Camp where they were displayed on the wall of the store.
Pat Allen testified that he saw three guns in appellant's truck at Pruitt's Fish Camp and appellant was discussing selling the guns to Joe Tierce. The next time he saw the guns they were in Joe's store. He identified State's Exhibit No. 1 as being one of the guns.
Blake Cline stated that he saw appellant and Lester Tierce talking to Joe Tierce while the three men were standing by appellant's truck which had three guns in it. Cline also identified State's Exhibit No. 1 as being one of the three guns.
Pat Allen was recalled as a witness for the State and testified that, shortly before the sale and purchase of the guns at Pruitt's Fish Camp, appellant had asked him if he could move approximately 40 guns for appellant.
Appellant testified that he had known Joe Tierce for several years and had done many favors for him. He considered Joe a friend and was often at his place of business. He made deposits and cashed checks for him. He denied that he had ever sold any guns to Joe Tierce at any time.
Timmy Westbrook was called as a witness in behalf of appellant and testified that he was on a dove shoot on September 18, 1978, along with appellant, Jimmy Hammonds, Pat Allen and Joe Tierce. He was shown State's Exhibit 1 and stated he saw the identical gun in Pat Allen's truck at the dove shoot on September 18, 1978. He picked up the gun from the truck and noticed *Page 408 
it had a defective magazine and the handle was broken. He stated that after he examined the gun he put it back in Pat Allen's truck.
Several witnesses testified to appellant's good character. They also said he had a good reputation for truth and veracity.
Appellant claims, in brief, that in the trial of this case the jury was without the benefit of alibi testimony "in that the appellant at the trial date had no way of knowing or any knowledge as to the dates and places that the prosecuting witnesses would testify in their efforts to obtain the conviction of appellant," that it was only after the prosecuting witnesses had committed themselves to dates and places when the alleged offense was committed that appellant was able to recall events that conclusively proved that he was not present when the alleged offense was committed. He filed a motion for a new trial based upon newly discovered evidence that he was at a dove shoot on September 23, 1978, at the time the prosecution claimed he sold three guns, including the Flanigan gun, to Joe Tierce.
At the hearing on the motion for a new trial appellant presented considerable testimony tending to show that he was at a dove shoot on September 23, 1978, and, therefore, could not have committed the alleged offense for which he stood convicted.
In Character v. State, 51 Ala. App. 589, 287 So.2d 916, certiorari denied, 291 Ala. 775, 287 So.2d 919, this Court held:
 "It is the law of this state that the unexplained possession of property does not raise the presumption that the property was stolen. There must be other evidence of the corpus delicti. When this has been shown, and the stolen property, soon after the offense, is found in possession of a person, who is unable to give a satisfactory explanation of his possession, then the jury is authorized to infer his guilt. Orr v. State, 107 Ala. 35, 18 So. 142; Buckles v. State, 291 Ala. 352, 280 So.2d 814 (1972).
 "The requisite scienter for the crime of receiving stolen property may be inferred from the recent possession of stolen goods. Stanley v. State, 46 Ala. App. 542, 245 So.2d 827.
 "In Buckles, supra, our Supreme Court cited with approval the following quotation from the case of Aron v. United States, 8 Cir., 382 F.2d 965, 970:
 "`The doctrine that possession of recently stolen property gives a permissible inference of knowledge on the part of the possessor that the property had been stolen, unless the possession thereof is accounted for in a reasonable and satisfactory manner consistent with the circumstances of the possession, is a factually sound and a necessary evidentiary rule. Without this evidentiary rule in criminal cases it would be almost impossible to consider for conviction any of the possessors or fences of stolen property unless they admitted that they knew the property to be stolen, which is an admission not likely to be forthcoming.'"
Appellant insists that the trial court's denial of his motion for a new trial constitutes reversible error. We do not agree.
In Zuck v. State, 57 Ala. App. 15, 325 So.2d 531, certiorari denied, 295 Ala. 430, 325 So.2d 539, Judge DeCarlo in a unanimous opinion, held:
 "The general principles applicable to a motion for a new trial on the claim of newly discovered evidence are found in Hodge v. State, 32 Ala. App. 283, 26 So.2d 274. Specifically, the court stated that such a motion must be predicated on the following requirements:
 "`. . . "(1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; (5) that it is not merely cumulative, or impeaching."'
 "Although appellate courts do not favor granting new trials on these grounds, much is left to the trial court's discretion, and its decision will not be revised unless *Page 409 
an abuse is shown. Hodge, supra; Aaron v. State, 181 Ala. 1, 61 So. 812; Slaughter v. State, 237 Ala. 26, 185 So. 373; Welch v. State, 28 Ala. App. 273, 183 So. 879.
. . . . .
 "We have no reason to interfere with that exercise of discretion under the facts shown. Their credibility was for the trial judge. Dawson v. State, 44 Ala. App. 525, 215 So.2d 459.
 "The concept of due diligence was explained by the Iowa Supreme Court in Westergard v. Des Moines Ry. Co., 243 Iowa 495, 52 N.W.2d 39, and we quote approvingly.
 "`. . . The showing of diligence required is that a reasonable effort was made. The applicant is not called upon to prove he sought evidence where he had no reason to apprehend any existed. He must exhaust the probable sources of information concerning his case; he must use that of which he knows, and he must follow all clues which would fairly advise a diligent man that something bearing on his litigation might be discovered or developed. But he is not placed under the burden of interviewing persons or seeking in places where there is no indication of any helpful evidence.'"
The newly discovered evidence offered by appellant consists of testimony that he was seen around noon on September 23, 1978, at a dove shoot by various people. There is no testimony in the record as to the time of day that appellant allegedly sold the stolen guns to Joe Tierce. There was a time lag of several hours as to his presence at the dove field on the day of the offense.
In Washington v. State, 259 Ala. 104, 65 So.2d 704, the Supreme Court said:
 "The granting of such a motion is addressed to the sound discretion of the trial court and will not be revised on appeal unless it clearly appears that that discretion has been abused, which we cannot here affirm as a fact. Maund v. State, 254 Ala. 452, 48 So.2d 553; Slaughter v. State, 237 Ala. 26, 185 So. 373."
In Young v. State, 283 Ala. 676, 220 So.2d 843, the court held:
 ". . . Where the evidence presented raises questions of fact for the jury, and such evidence, if believed, is sufficient to sustain conviction, the denial of a motion to exclude the state's evidence, the refusal to give the affirmative charge and the overruling of a motion for new trial, does not constitute error."
The record reflects that on the day of sentencing appellant and his attorney appeared in open court and pleaded guilty to nine other similar cases. The court imposed a three-year sentence in each of the ten cases and specifically ordered that all sentences run concurrently. Thus, in ten cases appellant received only three years. The court suspended all the sentences and placed appellant on probation for three years.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.