**Michael L. REYNOLDS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 580S154.**

Supreme Court of Indiana.

July 14, 1981.

Harriette Bailey Conn, Public Defender, Carr L. Darden, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from the denial of a petition for post-conviction relief. The petitioner, Reynolds, pleaded guilty to two counts of armed robbery, class B felonies, Ind.Code § 35–42–5–1 (Burns 1979), and was sentenced to two consecutive ten year sentences. We do not have jurisdiction of this case under Ind.R.App.P. 4(A)(7) because no single sentence is greater than ten years. See Menefee v. State, (1981) Ind., 417 N.E.2d 302. We will, however, exercise our discretionary authority in order to avoid remanding the case to the Court of Appeals and causing further delay.

The evidence favorable to the State shows that on April 11, 1978, petitioner held up a drug store in Indianapolis at gunpoint, robbed three people who were in the store, and fled in a car driven by another man. Petitioner was charged with three counts of armed robbery and the case was set for

trial. Before then, petitioner entered into an agreement in which the State agreed not to prosecute one count in return for his guilty plea to two counts. The trial court accepted the plea and imposed sentence.

This appeal raises the following issues: (1) whether the record of the guilty plea hearing supports the conclusion that the petitioner knowingly and intelligently entered his guilty plea; (2) whether the record demonstrates that there was a factual basis for acceptance of the plea; (3) whether petitioner demonstrated that he did not have effective assistance of counsel; and (4) whether petitioner demonstrated that there was newly discovered evidence of entrapment.

### I.

■ Reynolds claims that the post-conviction court's conclusion of law that the plea of guilty was entered knowingly, intelligently and voluntarily is not supported by the record. He argues that the evidence most favorable to the State reveals that at the time of the guilty plea and also at the time of sentencing, he expressed dissatisfaction with the services of his attorney for his failure to investigate facts supporting an entrapment defense. Because of this claimed failure, Reynolds argues, he was coerced into pleading guilty because otherwise he would have faced a trial without a properly prepared affirmative defense. At the post-conviction hearing, Reynolds' attorney asked him if he had told his attorney that he wanted "a trial instead of pleading guilty." Reynolds replied: "Yes, well, I kept telling him that I wanted to, you know, find out, you know, what was what." The record of the guilty plea hearing shows that the trial court directly addressed Reynolds and questioned him to determine whether he could read and write, whether he understood that the plea of guilty was an admission of the truth of the facts alleged in the charging information, and that when he pled guilty the court would immediately proceed with judgment and sentence; whether he understood that by pleading guilty he would be waiving the

rights to a public and speedy trial; whether he understood that in a trial he would have the right to confront his accuser and witnesses against him; whether he understood that in a trial he would have the right to have compulsory process by subpoena for obtaining witnesses on his behalf; and whether he understood that in a trial the State would have the burden of proving his guilt beyond a reasonable doubt, and he would not be compelled to testify against himself or otherwise incriminate himself. The trial court also asked the defendant whether he understood that he might be sentenced to the basic statutory term of ten years in prison or that the court might add ten years or deduct four years from each sentence so that the sentencing range for each count was from six to twenty years. To each question, defendant answered "yes". The court then addressed the defendant and said, "On the other hand, if you had a trial you might be proven not guilty [sic] and be completely exonerated and acquitted. Do you understand that could be the other possibility?" Defendant replied, "yes sir." The court then addressed Reynolds and asked him whether he was entering into the plea agreement voluntarily. Defendant said yes. Asked whether there were any promises, force, or threats used on him to obtain the guilty plea, defendant answered, "no sir". Asked whether, understanding the rights of which the court had advised him, the defendant still wanted to plead guilty, Reynolds replied, "yes, sir."

Up to this point, the evidence clearly supports the conclusion that the plea was entered knowingly, intelligently, and voluntarily.

When the court proceeded to ask whether Reynolds had sufficient time to talk with his attorney and whether he was satisfied with his services, he replied, "yes, sir." The trial court then asked, "Can you think of anything he should have done that he has failed to do?" Defendant answered, "yes, sir." Asked what that was, Reynolds replied, "Well, like I really don't know too much about the guy that was on the case

with me, if he was a police informer or what, you know. I was set up." Asked what he thought his lawyer should have done, Reynolds replied, "Well, like checked on that." The court asked, "You mean to find out if there was an informant?". Reynolds replied, "Yes, entrapment." At this point the court asked the prosecutor to give a statement of the facts supporting the charge. The statement recited that on April 11, 1978, the police received an anonymous tip that an armed robbery would take place at a named pharmacy within the hour; that the caller gave a description of the car and of the clothing worn by one of the robbers; that three detectives went to the location to set up surveillance, observed the described car pull up and the described subject, who was the defendant, get out, enter the store, leave three minutes later, and re-enter the car; and that detectives chased the car and arrested the defendant. Reynolds said that the statement was essentially correct. The prosecutor testified that he had no knowledge as to whether the anonymous caller was a police informant. The court then found that there was a factual basis for the plea, accepted the plea of guilty to the two counts, and set the date for sentencing. At the sentencing hearing the defendant again expressed his dissatisfaction with his attorney about the entrapment issue. The court proceeded with sentencing.

Reynolds now claims that the records of the guilty plea and sentencing hearings show that his plea was not freely and understandingly given because at the very time he was stating that he understood what rights he was waiving, he demonstrated by his other statements that he did not understand that the consequence of pleading was a waiver of an entrapment defense, if there was one.

At the hearing on the petition for post-conviction relief, Reynolds testified that he did not understand the , consequences of pleading guilty. The post-conviction hearing judge, in the face of conflicting evidence, was not bound to believe Reynolds' testimony that he did not understand his rights and the consequence of waiver. A petitioner in a proceeding for post-conviction relief has the burden of establishing his grounds for relief by a preponderance of the evidence. Ind.R.P.C. 1, § 5. In order to prevail on appeal from a denial of the petition, "appellant must satisfy the court that the evidence as a whole was such that it leads unerringly and unmistakably to a decision in his favor; that is, one opposite to that reached by the trial court." *Sotelo v. State*, (1980) Ind., 408 N.E.2d 1215. The question, then, is whether the record of the guilty plea hearing clearly demonstrates that at the outset Reynolds was so confused about the meaning of the guilty plea that the trial judge could not have determined that it was voluntarily, knowingly, and intelligently given. There is an apparent conflict between appellant's answers to the trial court's inquiries about waiver of rights and his expression of dissatisfaction with his attorney's failure to investigate an entrapment defense. Nevertheless, Reynolds was given every opportunity by the court to reject the plea bargain agreement and he stated that he wished to accept the terms. He stated that he understood that he might, if he went to trial, be acquitted, and that he wished to enter his guilty plea. We cannot say that this evidence leads unerringly to the conclusion that the plea was not made voluntarily, knowingly, and intelligently.

## II.

██ Reynolds next claims that the post-conviction hearing judge erred in concluding that there was a factual basis for the guilty plea. Reynolds argues that his testimony at the guilty plea hearing and the sentencing hearing regarding his displeasure with his attorney's failure to investigate a possible entrapment defense should have alerted the trial court to an unresolved conflict between this testimony and his assertions of waiver. At the guilty plea hearing, the prosecutor read from a Capias information sheet the statement of the facts already referred to in part I above. In response to the trial court's question whether this statement was essentially correct, Reynolds said that it was. At the post-con-

viction hearing Reynolds again admitted that he had committed the robbery, indicating that he had committed the crime under duress, because the other man with him during the robbery, "said he had some information on me." Police officers who made the arrest denied that the other man was a police agent. In light of Reynolds' voluntary admissions that he committed the crimes charged, we cannot say that the evidence leads unerringly to the conclusion that there was no factual basis for acceptance of the guilty plea.

### III.

█ Reynolds' next claim is that he did not have effective assistance of counsel, which is guaranteed to criminal defendants by the Sixth Amendment to the United States Constitution and Art. I, § 13, of the Indiana Constitution. At the post-conviction hearing, in response to a question regarding the claim in his petition that his guilty plea was coerced, Reynolds said: "I didn't have any defense to go to trial on the case, I didn't know nothing, you know, about the case. As you know, he never did tell me anything about the case, so I didn't have any defense to go to trial." Asked later whether he and his attorney had ever discussed an entrapment defense, Reynolds replied, "No we didn't, not until ... the plea bargain date, until after I had pleaded guilty, it was never brought out until then.... I never knew about the case until sentencing."

Reynolds had raised the possibility of the entrapment defense at his guilty plea hearing, but by his voluntary, knowing, and intelligent waiver had relinquished the right to pursue it at trial. Since Reynolds' only claim of ineffectiveness of counsel concerns the failure to pursue a trial issue, and a trial itself had been waived, we cannot say that the post-conviction hearing judge erred in concluding that there was no showing of ineffectiveness of counsel.

### IV.

█ Finally, Reynolds argues that he was entrapped into committing the crimes of which he was accused. We treat this issue as it was originally raised in the motion to correct error: whether the trial court erred in its finding of fact and conclusion of law that there was no showing of newly discovered evidence that the petitioner was entrapped.

Reynolds claims that uncontroverted evidence at the post-conviction hearing established that the man with him during the commission of the crime, Dohrn, was a police informant. He testified that Dohrn alone planned the robbery, and that en route to the pharmacy Dohrn stopped to use the telephone. Dohrn apparently was not arrested for the crimes. Reynolds then concludes that the evidence shows that he did not possess the predisposition to commit the crime before meeting with Dohrn.

The evidence that Dohrn was a police informant was not uncontroverted. Police officers testified at the post-conviction hearing that the telephone tip was anonymous and that David Dohrn was not a police informant. The post-conviction hearing judge is the sole judge of the weight of the evidence and the credibility of witnesses. In this case the judge was not bound to believe Reynolds' testimony that Dohrn entrapped him. Indeed, Reynolds' claim that Dohrn was a police informant, if believed, would neither set out a prima facie case of entrapment nor would it amount to newly discovered evidence of entrapment. While the mysterious Dohrn may well have tipped the police about the imminent robbery, Reynolds did not present a shred of evidence that he was entrapped. This Court in *Smith v. State*, (1972) 258 Ind. 415, 281 N.E.2d 803, adopted the following statement from *Sorrells v. United States*, (1932) 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413:

"'When the criminal design originates, not with the accused, but is conceived in the mind of the *government officers*, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound public policy from prosecution therefor.'" (Emphasis added.) 287 U.S. at 445, 53 S.Ct.

at 214, 77 L.Ed. at 418, citing *Newman v. United States*, (C.C.A.) 299 F. 128.

The record is devoid of any newly discovered evidence that Dohrn was a police agent, and the post-conviction hearing judge did not err in reaching his conclusion.

The decision of the trial court is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.