Kerry Eugene GARNETT,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 86–294.

Supreme Court of Wyoming.

Feb. 17, 1989.

Wyoming Public Defender Program, Leonard D. Munker, State Public Defender, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Timothy C. Kingston, Student Intern, Wyoming Defender Aid Program, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., David K. Gruver, Asst. Atty. Gen., Cheyenne, for appellee.

Before CARDINE, C.J., THOMAS, URBIGKIT and MACY, JJ., and HANSCUM, District Judge.

THOMAS, Justice.

The only issue to be resolved in this case is whether a motion for a new trial is an appropriate remedy to seek relief from a conviction based upon a plea of guilty to a criminal charge. The briefs present additional issues with respect to the obligation of the district court to hold a hearing prior to denying the motion for a new trial and the denial by the district court of a motion for peremptory disqualification. We hold that a motion for a new trial will not lie to attack a judgment and sentence based upon a plea of guilty, and the district court did not err in denying the motion for peremptory disqualification. The disposition of the contention concerning the motion for a new trial leads ineluctably to the conclusion that there was no obligation to hold a hearing. We affirm the district court.

In his Brief of Appellant, Garnett states these issues for review:

"I. Whether the district court abused its discretion by denying the appellant's motion for a new trial without holding a hearing.

"II. Whether the district court abused its discretion by denying the appellant's motion for a new trial."

In a Supplemental Brief of Appellant, the following issue is added:

"I. Whether the district court abused its discretion by denying Motion for Peremptory Disqualification."

The State of Wyoming, in its Brief of Appellee, rephrases the issues in this way:

"I. Whether the district court abused its discretion by denying appellant's motion for new trial.

"II. Whether the district court abused its discretion by denying appellant's motion for a new trial without an evidentiary hearing.

"III. Whether the district judge erred by failing to remove himself pursuant to appellant's peremptory challenge."

On September 17, 1984, Garnett and his co-defendant entered pleas of guilty to one count of first degree murder in violation of § 6–2–101(a), W.S.1977 (June 1983 Repl.), and one count of aggravated burglary in violation of § 6–3–301(a), (c)(i), W.S.1977 (June 1983 Repl.), which consolidated two acts of burglary occurring in separate premises. These charges arose out of the April 25, 1984 murder of James Exley at the Valli–Hi Supper Club near Torrington. Exley owned and operated this restaurant and lounge. The burglaries of the supper club and an adjacent house trailer, which was Exley's residence, were committed on the same day. Garnett and his co-defendant were arrested the following day and questioned about these events. Both confessed to Exley's murder and the two burglaries. The confessions were consistent in all material respects.

After the filing of charges, both defendants entered pleas of not guilty by reason of mental illness or mental deficiency and not triable due to mental illness or deficiency. Pursuant to the statutory procedure, the court ordered Garnett and his co-defendant to be taken to the State Hospital at Evanston for psychiatric examination. The examiner's report set forth the conclusion that neither Garnett nor his co-defendant suffered from mental illness or deficiency on the night of the murder, and both were competent to stand trial. Upon receiving the report of the examination, Garnett and the co-defendant decided to enter pleas of guilty.

In order to establish a factual basis for those pleas, the court received testimony from Garnett and his co-defendant. Their recitations established that the two went to the supper club at about 8:30 P.M. on April 25, 1984, intending to beat Exley and rob him. By 10:30 P.M., all other customers had departed, and Garnett and the co-defendant, being the recipients of free drinks from Exley, remained. Between the hours of midnight and 1:00 A.M., Garnett struck Exley on the head with a liquor bottle causing Exley's hands to contact the co-defendant's shoulders. As Exley collapsed to the ground, Garnett then raised him back to his feet, and the co-defendant stabbed him several times. The co-defendant claimed in his testimony that the stabbing was in retaliation for homosexual advances made toward him by Exley during the evening. After the stabbing, the two "busted" a sliding glass door to create the impression that someone had broken into the club. They then collected money and liquor, stowed it in Garnett's car, and left. They returned about an hour later to remove a watch and some rings from Exley's body, and then they broke into the adjacent house trailer where they slashed Exley's water bed and stole an electric razor and portable hand phone. The district judge concluded that this testimony constituted a sufficient factual basis to accept the pleas of guilty.

Before pronouncing sentence in the case, the court received testimony from the psychiatrist who had examined Garnett and the co-defendant. That testimony was to the effect that there was no indication that Garnett and the co-defendant were so intoxicated that they did not understand their criminal activity. The witness stated:

"* * * Even though they [Garnett and the co-defendant] were drinking afterwards, they were able to drive their car, conceal the property they had taken, attempt to establish an alibi, all before returning and going to their residence eventually, and I felt that that indicated to me that they could—that they under-

stood the nature of the crime and demonstrated a capacity to—or competency to attempt to defend themselves.

\* \* \* \* \* \*

" \* \* \* I think they understood that what they were doing was wrong. It was somewhat modified by the fact that they had—they felt disgust toward James Exley because of his alleged homosexual responses or approaches to them, and it was somewhat, I thought, probable that there was a decrease in their inhibitions at the time of the committing of the crime because of alcohol intake which may have resulted in the crime being more vicious and resulting in more serious injuries to Mr. Exley than was originally planned. However, I thought they knew what they were doing was wrongful and had the capacity to understand what the possible consequences were.

\* \* \* \* \* \*

"I saw nothing that would indicate diminished capacity or insanity or irresistible impulse."

After receiving this testimony, the court sentenced each defendant to life imprisonment for Exley's murder and to a consecutive sentence of twenty to twenty-five years for the burglary.

Almost two years later, Garnett presented a pro se motion to the district court requesting a new trial on the basis of newly discovered evidence. By his affidavit in support of his motion, Garnett alleged that the newly discovered evidence was that his co-defendant had "as a part of his scheme to induce my cooperation in robbing Mr. Exley, caused me to become temporarily insane by surreptitiously dissolving two portions of LSD in a coca-cola which I was preparing to drink." Garnett's affidavit also stated that he was not aware that the LSD had been placed in his drink until his co-defendant had furnished that information during a conversation at the penitentiary, and that the co-defendant had not told him of this conduct previously because the co-defendant "did not believe such information to be of probative or exculpatory value." A supporting affidavit of the co-

defendant also was filed which stated, in part:

"On or about April 1, 1984, I obtained two 'hits' of what is commonly known as 'windowpane acid.' (LSD–lysergic acid diethylamide, a chemical compound extracted from ergot alkaloids, as used in the study of schizophrenia and other mental disorders and as a psychedelic drug: it produces hallucinations, delusions, etc. resembling those occurring in a psychotic state).

\* \* \* \* \* \*

"The reason I chose this opportunity to induce insanity into Mr. Garnett was to calm his nerves and to make him more susceptible to following through on our plan to rob Jim Exley; which plans had, to this time, only been discussed in vague terms and more of a lark than actual 'plans.'

"Once the acid began to take effect upon Mr. Garnett it was easy for me to manipulate him into accompanying me to Mr. Exley's place of business; the 'Valli–Hi Supper Club.'

"Mr. Garnett did, in fact, become automatistic, susceptible to unquestioned obedience to my order.

"On or about August 25, 1986, while discussing with Mr. Garnett the circumstances surrounding the events which led to our imprisonment I blurted out: 'I don't see how you could even walk with all the acid you drank.' Mr. Garnett then asked me what in the world I was talking about and I then related to him the events described heretofore."

Garnett also filed a motion for peremptory disqualification of the district judge pursuant to Rule 23(d), W.R.Cr.P.

The district court summarily denied Garnett's motion for a new trial and his motion for peremptory disqualification. The record does not contain any statement of reasons for the rulings on these two motions. Garnett then filed a pro se notice of appeal, and this court appointed the public defender's office to assist him in prosecuting his appeal.

■ The essential claim by Garnett is that the new evidence which he recites in his motion and which is set forth in the accompanying affidavit could establish a defense of involuntary intoxication to the crimes to which he had entered pleas of guilty, and that this evidence meets the requirements of Rule 34, W.R.Cr.P., as well as the standard established by *Opie v. State*, 422 P.2d 84 (Wyo.1967). The State of Wyoming contends that a motion for a new trial pursuant to Rule 34, W.R.Cr.P., is not an available remedy to one who has been convicted upon a plea of guilty. Rule 34, W.R.Cr.P., which is identical to Rule 33, F.R.Cr.P., provides, in pertinent part:

> "The court on motion of defendant may grant a new trial to him if required in the interests of justice. If trial was by the court without a jury, the court on motion of the defendant for new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for new trial based on the ground of newly discovered evidence may be made only before or within two (2) years after final judgment, * * *."

The United States Court of Appeals for the Tenth Circuit has held that the literal language of Rule 33, F.R.Cr.P., does not justify a motion for a new trial on the basis of newly discovered evidence following a plea of guilty. *United States v. Lambert*, 603 F.2d 808 (10th Cir.1979). That case and other federal decisions of similar tenor are persuasive authority because of the adoption of the same rule in Wyoming. Other courts have decided this issue in the same way based upon similar reasoning. E.g., *United States v. Prince*, 533 F.2d 205 (5th Cir.1976); *Williams v. United States*, 290 F.2d 217 (5th Cir.1961); *United States v. Littlefield*, 543 F.Supp. 420 (N.D.Fla. 1982); *State v. Braverman*, 348 So.2d 1183 (Fla.App.1977); *State v. Cardosi*, 498 A.2d 599 (Maine 1985); *People v. Killingbeck*, 49 Mich.App. 380, 212 N.W.2d 256 (1973); *Harbour v. State*, 660 S.W.2d 12 (Mo.App. 1983); *State v. Kluge*, 198 Neb. 115, 251 N.W.2d 737 (1977); *State v. Dixon*, 38 Wash.App. 74, 683 P.2d 1144 (1984). We are cognizant of decisions in other jurisdic-

tions which have held, on the basis of their state statutes, that a motion for a new trial based upon newly discovered evidence will lie after entry of a guilty plea, or have held that, even though not technically proper, the reviewing court should consider the case under the standard of newly discovered evidence. *Dawson v. State*, 44 Ala.App. 525, 215 So.2d 459 (1968); *State v. Irwin*, 106 Ariz. 536, 479 P.2d 421 (1971); *State v. Urry*, 104 Ariz. 244, 450 P.2d 1018 (1969); *People v. Mendoza*, 195 Colo. 19, 575 P.2d 403 (1978); *Britten v. State*, 173 Ga.App. 840, 328 S.E.2d 556 (1985); *Reynolds v. State*, 422 N.E.2d 1239 (Ind.1981); *Laird v. State*, 385 Ind. 323, 385 N.E.2d 452 (1979); *Raim v. Stancel*, 339 N.W.2d 621 (Iowa App.1983); *State v. Alfonso*, 496 So.2d 1218 (La.App.1986); *Saiki v. State*, 375 N.W.2d 547 (Minn.App.1985); *People v. Brown*, 126 A.D.2d 898, 510 N.Y.S.2d 932 (1987).

Several courts have concluded, even though they did not rely on the limitation of the literal language of a rule or statute, that the consequences of the defendant's entry of a plea of guilty include an inhibition upon granting a new trial on the basis of newly discovered evidence after the plea. In such an instance, the defendant's only relief is to seek the withdrawal of his plea of guilty. See *Killingbeck*, 212 N.W.2d 256; *Kluge*, 251 N.W.2d 737; *Dixon*, 683 P.2d 1144.

We are satisfied that reasoning which forecloses a motion for a new trial is sound. Garnett's effort to obtain a new trial on the basis of newly discovered evidence encompasses the theory that a trier of fact should determine whether there was sufficient evidence to demonstrate a criminal intent under the circumstances. See *Crozier v. State*, 723 P.2d 42 (Wyo. 1986); *Goodman v. State*, 573 P.2d 400 (Wyo.1977). By his plea of guilty, however, Garnett waived the right to have that issue presented to a jury, and he admitted all of the essential elements of the charged crimes including the element of intent. See *Holmes v. State*, 715 P.2d 196 (Wyo.1986); *Tompkins v. State*, 705 P.2d 836 (Wyo. 1985), cert. denied 475 U.S. 1052, 106 S.Ct.

1277, 89 L.Ed.2d 585 (1985). Since Garnett waived the right to have a jury determine the issue of criminal intent, he cannot now contend that new evidence would persuade a trier of fact that he did not have the requisite intent unless he first overcomes the waiver and the admission encompassed by his plea of guilty.

Garnett's motion for a new trial manifests a mistake about his remedy. Any hearing addressing issues in an instance in which no relief could be afforded would be obviously superfluous. Consequently, there was no error in the refusal of the district court to hold a hearing prior to denying this motion for a new trial.

■ We cannot discern whether the trial court considered Garnett's pleading as a motion to withdraw his plea of guilty. The trial court would have that prerogative. We have held that new evidence demonstrating the defendant was not guilty because of mental illness could be a "plausible reason" or a "fair and just reason" for permitting the withdrawal of a plea of guilty prior to sentencing pursuant to our Rule 33(d), W.R.Cr.P. *Schmidt v. State*, 668 P.2d 656 (Wyo.1983). In that case, we relied on several federal decisions holding that, pursuant to Rule 32(d) F.R.Cr.P., a defendant should be permitted to withdraw a guilty plea prior to sentencing if new evidence were presented demonstrating that he could not be criminally responsible for the consequences of his act. A similar rule would pertain with respect to such evidence presented subsequent to sentencing following a guilty plea but, after sentencing, the standard which must be met is that withdrawal of the plea is necessary to correct a manifest injustice. Rule 33(d), W.R.Cr.P.; *McGiff v. State*, 514 P.2d 199 (Wyo.1973), cert. denied 415 U.S. 992, 94 S.Ct. 1592, 39 L.Ed.2d 889 (1973).

If the district court did treat Garnett's pleading as a motion for leave to withdraw his plea of guilty, the denial of that motion would be correct. Had the affidavits which Garnett presented raised a bona fide question of fact concerning whether he should be permitted to withdraw his plea of guilty in order to prevent manifest injustice, a

hearing would have been necessary prior to denial. See *Bibbins v. State*, 696 P.2d 1300 (Wyo.1985). The record in this case, however, permits a conclusion as a matter of law that it would not be appropriate to permit Garnett to withdraw his plea of guilty to prevent a manifest injustice. If the facts alleged in the affidavits are accepted as true, without subjecting them to the scrutiny generally applied to the post-conviction testimony of a co-defendant attempting to absolve his partner of criminal liability (*State v. McFord*, 115 Ariz. 246, 564 P.2d 935 (1977); *State v. Irwin*, 106 Ariz. 536, 479 P.2d 421 (1971)), they do not raise a bona fide issue of fact. The factual basis for accepting the plea of guilty demonstrates quite clearly that Garnett was aware of his actions and understood the consequences. The evidence is clear that he intended to participate in the assault upon Exley and the burglary of the supper club and trailer residence. The only facts alleged with respect to the effect on Garnett of the LSD are set forth in the affidavit of the co-defendant. The co-defendant would not be permitted to testify to what is alleged in the affidavit about those effects since they are pure conclusions, and nothing suggests that the co-defendant could be qualified as an expert witness with respect to the subject matter of those conclusions. If the court had considered the pleading as a petition to withdraw Garnett's plea of guilty in order to prevent manifest injustice, still no hearing would have been required based upon the record because the record before the district court did not encompass any facts which controvert those established at the time Garnett's plea of guilty was entered. See *Bibbins*.

■ The claim by Garnett that there was error in denying the motion for peremptory disqualification pursuant to Rule 23(d), W.R.Cr.P., is without merit. That rule provides:

"A district judge may be peremptorily disqualified from acting in a case by the filing of a motion requesting that he be so disqualified. The motion shall be filed by the state at the time the information or indictment is filed, designating the

judge to be disqualified. The motion shall be filed by a defendant at the time of his arraignment and following the entry of his plea, designating the judge to be disqualified. In any matter, a party may exercise the peremptory disqualification only one (1) time and against only one (1) judge."

Garnett's motion for peremptory disqualification clearly is too late under the language of the rule. There is no need to expand the justification for denying the motion beyond the parameters of the rule.

The decision of the district court is affirmed.