PATTERSON, Judge.
Appellant, Todd Griffith, was indicted on August 21, 1987, in a 16-count indictment. Five counts were for sexual abuse in the first degree, five for sodomy in the first degree, three for sexual abuse in the second degree, and three for sodomy in the second degree. §§ 13A-6-63, -64, -66, and -67, Code of Alabama 1975, respectively. The charges arose out of alleged sexual acts committed upon 4 young boys, one being under 12 years of age and 3 being over 12 but under 14 years of age. Appellant apparently was 22 or 23 at the time. On March 8, 1988, appellant pleaded guilty to one count of attempted sodomy in the first degree and three counts of sodomy in the second degree. On April 14, 1988, the trial court sentenced appellant to 20 years’ imprisonment on each of the four convictions, and ordered the sentences to run concurrently. Of the remaining counts, the state dismissed eight of them on March 7, 1988, and nol-prossed the others at the time the guilty pleas were entered. On June 1, 1988, appellant, having retained new counsel, moved the court to set aside the sentencing order on the ground that the sentences of 20 years for the second degree sodomy counts were in excess of those authorized by statute. The trial court agreed and granted the motion on the same day.
On June 20, 1988, just prior to resentenc-ing, appellant moved to withdraw his guilty pleas, claiming that his pleas had not been knowingly and voluntarily made, and that he had been denied effective assistance of counsel. An evidentiary hearing was held on this motion on July 6,1988. On July 15, 1988, the trial court denied the motion. The court then resentenced appellant to 20 years’ imprisonment for the conviction of attempt to commit sodomy in the first degree and 10 years for each of the 3 convictions for sodomy in the second degree. The sentences were ordered to run concurrently.
Appellant raises two issues on appeal. First, he contends that his guilty pleas were not knowingly and voluntarily made and, second, that he was denied his consti *237 tutional right to effective assistance of counsel. He argues that the trial court abused its discretion in denying his. motion to withdraw the guilty pleas.
It is within the sound discretion of the trial court to refuse withdrawal of a plea of guilty, and the denial of the motion will not be disturbed except where an abuse of judicial discretion is shown. State v. Holman, 486 So.2d 500 (Ala.1986); Dawson v. State, 44 Ala.App. 525, 215 So.2d 459 (1968), cert. denied, 283 Ala. 714, 215 So.2d 463 (Ala.1968). We cite, with approval, the general rule found in 22 C.J.S. Criminal Law § 421(3) (1961), as follows:
“In a proper case, the discretion of the court should be freely exercised to allow a withdrawal of a plea of guilty; it should be liberally exercised especially in capital cases, in favor of life and liberty or innocence and liberty; and, as the law favors a trial on the merits, the court should resolve all doubts and exercise its discretion in favor of such a trial.
“... [T]he withdrawal of the plea of guilty should not be denied in any case where it is in the least evident that the ends of justice will be subserved by permitting not guilty to be pleaded in its place.
“... Where the evidence as to whether the plea was entered through fear, duress, misunderstanding, or improper influence is in hopeless conflict, the better practice is to permit the plea to be withdrawn. Indeed, any doubt as to the plea’s being voluntary should be resolved in accused’s favor.” (Footnotes omitted.)
The record in the instant case shows that appellant, since early childhood, suffered from a severe learning disability caused by dyslexia; that he had to repeat several grades and did not finish high school until he was 20 years of age; that he was a “slow learner,” had difficulty understanding concepts such as constitutional rights and their waiver, and was easily influenced by suggestion; that, at the time of pleading guilty, he was 23 years of age and had a reading aptitude of a fourth grader, a vocabulary of a seventh grader, and the emotional maturity of a twelve-to fourteen-year-old. Appellant had no prior record or experience with the legal system. A psychologist testified that he examined appellant and found no homosexual tendencies.
The record further shows that appellant’s case was initially set for trial on Monday, March 7, 1988, after having been continued at a previous term of court; that appellant had no knowledge that the case was to be tried until the night of March 6, a Sunday, when appellant’s father learned of it indirectly from a third party; that appellant’s father immediately contacted defense counsel and was advised that there must be a mistake and not to worry because there was a “fair chance we would not get to the case at this trial setting”; that appellant was required to leave school and rush to the courthouse, without his parents, on Monday afternoon, March 7, where a jury was selected to try his case; and that, after the jury was selected and the parties were advised that the court would start taking testimony the next morning, appellant, his father, and defense counsel repaired to counsel’s office where a discussion ensued concerning the advisability of appellant’s pleading guilty. During the discussion, counsel told appellant and his father that appellant’s chances of winning were “slim” and that he would “minimize his exposure” by pleading guilty. He advised appellant that it was his belief, as well as that of the prosecuting attorney, that appellant would receive a sentence of from three to five years if he pleaded guilty. The following morning in court, appellant agreed to plead guilty to four sodomy charges, while still insisting to his attorney that he was innocent. We note here that appellant steadfastly denied his guilt of the charges to his attorney from the very beginning. The statement or admission made to the police by appellant and referred to later in this opinion, as far as this record discloses, amounts to only an admission of acts constituting sexual abuse and not sodomy. The prosecuting attorney had agreed to dismiss the other remaining charges if appellant entered guilty pleas on one count of attempted sodomy in the first degree and *238 on three counts of sodomy in the second degree. Each count involved a different victim. At the counsel table, immediately prior to pleading guilty, appellant executed Ireland forms purportedly acknowledging his understanding of the consequences of his guilty pleas and waiving his constitutional rights. Ireland v. State, 47 Ala.App. 65, 250 So.2d 602 (1971). The evidence as to whether the Ireland forms were explained to appellant is conflicting. Appellant and his father testified that appellant never read them and that defense counsel did not explain them. The trial court explained appellant’s rights to some extent, and partly relied on the representation of counsel that they had been explained by him. The trial court advised appellant that the maximum sentence he could receive under one of the counts was 20 years, but did not tell him to which count it applied. Appellant did not testify to any facts upon which to base the pleas, nor was he asked to do so. Rather, after the prosecutor, in response to the court’s question of what the state’s evidence would show, read the four pertinent counts of the indictment using the terms “sodomy” and “deviate sexual intercourse,” appellant stated that he was guilty. There is some question as to whether appellant understood the meaning of the terms “sodomy” and “deviate sexual intercourse.” Defense counsel stated that he explained the charges to appellant, including an explanation of “sodomy” and “deviate sex” prior to the entry of the guilty pleas; however, appellant denied that such explanation occurred.
The prosecutor’s file included a statement made by appellant to police investigators during the investigation of the charges. The statement is not in the record before us; however, we can deduce from the testimony about the statement that it contains a denial of acts constituting sodomy, but contains an admission to “fondling” the boys. No motion to suppress the statement was filed prior to any of the set trial dates or on the first day of trial.
Appellant contends that his counsel was ineffective for not being prepared to go to trial on March 7, 1988. Counsel testified that he had had numerous telephone conversations with appellant, and had several interviews with him during the weeks preceding the call of the case for trial. Counsel also stated that he had reviewed the applicable law, conducted research, and organized his file. Although counsel had been furnished a list of character witnesses and claimed that he had some “tentative” contact with them, he had not contacted them immediately prior to trial and did not have subpoenas issued for them. He had not interviewed the alleged victims, nor the investigating officers. Counsel’s usual method of preparing for trial was to issue subpoenas and commence talking with the witnesses a week prior to trial. He did not follow his usual procedure in this case. The record shows the following:
“Q. [New defense counsel]: Would it be accurate to say that the manner in which you approached this case was governed to some extent by your belief that it would not be tried that week?
“A. [Old defense counsel]: Yes, to some extent that would be true.”
Defense counsel stated that he considered appellant’s learning disability, but discounted it because he felt that it would not be helpful. It is apparent that defense counsel relied principally on the prosecuting attorney’s investigative file of the case, which had been made available. No pre-trial discovery motions were filed. Defense counsel admitted on cross-examination that he did not fully prepare the case for trial because of his belief that the case would not be reached and that appellant would plead guilty. The record shows the following:
“Q. [New defense counsel]: Did you ever represent to him that this case would not be for trial that week?
“A. [Old defense counsel]: I told him it was unlikely that it would be or I had strong feeling that it would not be for trial. I don’t know the exact words that I used.
“Q. Why were you under the impression of that, Jim?
“A. I felt that the same thing that had happened on the earlier docket was going *239 to happen — well, for two reasons: One, I felt the same thing that happened with the earlier docket might well happen in this case. I had not been told that by the Court in this case as I had been in the earlier case, but understood that at least one of the cases prior to this case on the docket would very likely go to trial if not a couple of the cases prior to this one. So, I had the feeling that there was a good chance that we would not be reached again.
“But I want to be clear, no one told me that. I’m not trying to mislead anyone.
“Q. Did you not prepare the case based on that?
“A. That was part of my thinking. Another part of my thinking was that there was a good chance that Todd would probably end up entering a guilty plea as well.
“Q. Talking about your non-preparation, were you actually prepared to try the case that week?
“A. Yes, in terms of my own preparations for trial, I was ready. I did not like the way it turned out in terms of Jim Griffith and Todd not knowing about it, obviously, at such a late date as well as Mr. Patterson, as character witnesses. That was a definite disadvantage to have them come in sort of at the last minute and get those folks ready. So, I had my work cut out for me to get those folks ready had we ended up going ahead and trying the case.”
Upon this evidence before us, we find that we do not need to determine whether appellant’s counsel was ineffective, for we hold that appellant’s pleas were not knowing and voluntary and, thus, the trial court erred in denying their withdrawal on this ground. However, although we are not compelled to decide counsel’s effectiveness, we do find that the appearance of counsel’s lack of preparation, to appellant and his father, had the effect of casting appellant’s decision to plead into a whirlwind of pressure and haste. In effect, the appearance of counsel’s lack of preparation, counsel’s exerted pressure to plead, and the apparent benefit to counsel if appellant pleaded, were all elements of pressure which tainted the knowingness and voluntariness of appellant’s pleas. Appellant was suddenly faced with the prospect of an immediate trial on serious charges without forewarning. Although his counsel testified that he was prepared to go to trial, the record offers clear indication that the appearance was otherwise. It is without question, that had appellant gone to trial, much of the preparation would have had to be accomplished during the trial. Defense counsel candidly admitted that, had he been forced to trial, he would have had “his work cut out for him.”
In reviewing how these surrounding circumstances affected appellant and his pleas, we view the situation from his perspective — the perspective of a man who is easily influenced by suggestion, who is naive and inexperienced with the legal system, who is a slow learner and considerably disabled mentally and emotionally. Viewed in this light, we cannot hold that the circumstances did not overcome his free will or fatally endanger the knowingness of his pleas by confusing his understanding of the pertinent considerations. We find that, even though appellant was immature and had lower than average ability to comprehend, he was surely aware of his counsel’s unpreparedness. With counsel being unprepared, the imminence of trial of serious charges hanging over him, and his counsel telling him he could not win, appellant was compelled to hastily decide whether to plead guilty as urged by his counsel or to go to trial. Reluctantly, in spite of persistent protestations of innocence, he made the decision to plead at the counsel table as the taking of testimony was about to commence. The period of consultation and opportunity for deliberation was brief at best. We believe that the pressure on appellant was great and that his abrupt change of heart was without due consideration. This abrupt change, under the circumstances, strongly indicates that the pleas were entered in haste and confusion. Cf. United States v. Punch, 709 F.2d 889, 895 n. 10 (5th Cir.1983) (as quoted in Pierce v. State, 484 So.2d 506, 510 (Ala.Cr.App.1985)).
*240 Moreover, the evidence at the hearing on the withdrawal motion raises grave doubt about appellant’s understanding of the nature of the charges, and we find nothing in the guilty plea proceeding to refute appellant’s claim that he did not understand the nature of the charges. The colloquy fails to establish, by positive evidence, that the pleas were made with understanding of the nature of the charges. The court took no steps to satisfy itself that this particular appellant[1] understood the meaning of the charges, and to learn what acts allegedly committed by appellant constituted the elements of the charges. Appellant’s failure to fully grasp the situation is illustrated by his father’s testimony that, after the pleas had been entered, appellant asked him the meaning of “sodomy.” Assuming that appellant did not, in fact, know the definitions of “sodomy” and “deviate sexual intercourse,” the record offers absolutely no indication that, had the trial court requested appellant to state the sexual acts he allegedly perpetrated on his victims, appellant would have admitted acts constituting the crime of sodomy or attempted sodomy in any degree.
In view of the totality of the circumstances in this case, we find that appellant’s guilty pleas were not entered voluntarily and understanding^. It is error for the trial court to accept a defendant’s guilty plea without an affirmative showing that the plea is intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). We find that the trial court abused its discretion and committed error when it denied appellant’s motion to withdraw his pleas.
We reach this conclusion with due consideration for the strong presumption of reliability accorded a defendant’s in-court statements, made at the time a guilty plea is entered, concerning the voluntariness of the plea and his satisfaction with his attorney’s performance as well as the deference to be accorded the discretion of the trial court in cases of this kind. However, after laborious deliberation, due to the unusual circumstances in the instant case, we believe that “the ends of justice will be sub-served by permitting not guilty to be pleaded” in place of the guilty pleas. 22 C.J.S. Criminal Law, supra.
We reverse and remand this case to the trial court with directions to set aside the guilty pleas heretofore entered and to restore the case to the docket for proper disposition.
REVERSED AND REMANDED WITH DIRECTIONS.
All Judges concur.

. While we are not establishing or even intimating a duty to do so, trial counsel should have, for the benefit of himself as well as all those involved, put the trial court on notice of appellant’s diminished mental and emotional faculties. Had this been done on the record, the trial court could have used more caution in its colloquy with appellant and, in addition, such could possibly have foreclosed or, at least, enlightened the subsequent proceedings questioning the validity of appellant’s guilty pleas.