The appellant, Tyrone Rose, was charged by separate indictments with two instances of unlawfully distributing cocaine, in violation of Ala. Code 1975, § 13A-12-211. He was convicted by a jury on one of the indictments (CC-90-509) and later entered a guilty plea to the other indictment (CC-90-508). A sentence of 15 years' imprisonment was imposed on each conviction, with the sentences to run concurrently. Two issues, one related to each conviction, are raised in this appeal.
 I
With regard to the jury conviction, CC-90-509, the appellant contends that the trial court erred in permitting the prosecutor to introduce testimony concerning the derivation of crack cocaine.
Raymond Adair, a drug analyst with the Department of Forensic Sciences, testified on direct examination that he had tested the substance previously identified as that sold by the appellant and had found it to contain cocaine "in the form of cocaine base and in this particular form, it was consistent with that of crack." R. 79. The following then occurred:
 "Q. [By MR. GREENE, assistant district attorney:] And what is crack cocaine?
 "A. Crack is a form of cocaine which can be smoked due to its being more volatile than the cocaine powder which is a salt of cocaine which normally comes from South America. And because of this, as I mentioned, because it's in the base form, it can be smoked and it's taken in through the mouth into the lungs and the gaseous state it passes rapidly about —
 "MR. BOYNTON [defense counsel]: I object, Your Honor, the witness has answered the question.
"THE COURT: Sustained.
"MR. BOYNTON: On the subject, I object.
"THE COURT: Sustained.
"Q. How is crack cocaine formed or made?
 "A. A solution of cocaine hydrochloride, first you take the powder of cocaine hydrochloride [and] place it in water.
 "MR. BOYNTON: I think it's irrelevant. As to its history of how this comes about. He's done an analysis of [the] substance that was submitted and he finds that the substance was in violation of the controlled substance law as cocaine. I think that's satisfactory.
 "MR. GREENE: Your Honor, I think the form in which it [is] is entitled to an explanation.
"THE COURT: I'll let him answer. *Page 1042 
 "A. Cocaine as it normally comes from South America is in the form of the cocaine hydrochloride which is a salt of cocaine as I mentioned before. Because it's in the salt form, it's soluble in water. It also means that is can be dissolved in water and it can be shot up, or it can be snorted. However, to be smoked, it has to be converted to its base. Now in order to make crack the way they make crack is, they take water and add the cocaine hydrochloride powder to it, try to saturate the solution as much as possible by heating it, and then adding baking soda. When the baking soda is added, cocaine comes out of the solution. It just turns the whole solution white. That's because the cocaine now is in the base form and as the base, it's not soluble in water anymore. So, it precipitates out, and this is cocaine base which can settle to the bottom in the form of crack.
 "Q. All right. Is it just sitting out or are you cooking it? Do you heat it or what?
 "A. It's heated. It's heated. In other words, to get more of the cocaine hydrochloride in solution, it would be analogous, if you're trying to get as much sugar to dissolve as possible, you heat it. You heat the solution of the water and you keep adding the sugar. You can do the same thing with cocaine and it will become what we call saturated for that particular temperature the water is, has dissolved as much of the cocaine as it can. At this point then, they add the bicarbonate, or baking soda combination with the chloride freeing the cocaine as the base forms. The base form is not soluble in the water anymore, so, it's forced out and it precipitates out, or what we say it settles out. But the solution turns white and then as little tiny crystals of cocaine base come in contact with each other, they form bigger crystals and you get this —
 "Q. And what are the reasons for crack versus the powder cocaine?
 "A. Because in the form of cocaine base or crack, it can be smoked.
"MR. BOYNTON: Your Honor, I object.
 "THE COURT: We don't need to go into this any further. Is there any reason to go any further with this?
 "MR. GREENE: Well, Your Honor, we feel like the jury would be entitled to know what crack cocaine is. That's why we're trying to explain it.
 "MR. BOYNTON: It's highly prejudicial to my client, Your Honor. I think the witness already has answered.
 "THE COURT: I think he's sufficiently explained it."
R. 79-82.
As can be seen from the above-quoted passage, the specific objection to this testimony at trial was that it was "irrelevant." On appeal, both the appellant and the State argue this issue on the basis of "relevance." However, "relevance" is not the question here. In this state, evidence is relevant if it has any logical relationship to the purpose for which it is offered. C. Gamble, McElroy's Alabama Evidence § 21.01(1) (4th ed. 1991). The above-quoted testimony of drug analyst Adair was, according to the prosecutor, offered to explain to the jury the nature and derivation of crack cocaine. Quite clearly, the testimony was relevant for this purpose. However, the prosecutor's stated purpose for offering this testimony — explaining the nature and derivation of crack cocaine — wasnot material to this case. See generally McElroy's AlabamaEvidence § 20.01.
Agent Darryl Armour of the Alabama Beverage Control Board testified that, around 1:00 p.m. on the afternoon of March 2, 1990, he purchased a "$20 rock" from the appellant. R. 47-48. Armour unequivocally identified the appellant as the person from whom he purchased the substance. He also testified that he had spoken to or dealt with the appellant on several occasions prior to March 2, 1990. R. 45-46. The appellant did not testify or otherwise present an affirmative defense.
Section 13A-12-211, Ala. Code 1975, provides that "[a] person commits the crime of unlawful distribution of controlled substances if, except as otherwise authorized, *Page 1043 
he sells, furnishes, gives away, manufactures, delivers or distributes a controlled substance. . . ." It is clear that this section proscribes certain activity in connection with "a controlled substance," regardless of the form of the controlled substance. In a prosecution under this section, the State need prove only that the defendant engaged in proscribed activity in connection with an actual controlled substance.
Although the indictment against the appellant tracked the language of § 13A-12-211, it is clear from the evidence adduced at trial that the State was proceeding solely on the "sells" alternative. There was absolutely no indication that the appellant manufactured the crack cocaine, nor did the State make any allegation to that effect. Under the evidence presented in this case, the only issues to be resolved by the jury were whether the appellant sold a substance and whether that substance was cocaine. How the cocaine came to be in the particular form in which it was sold was immaterial because it was of absolutely "no consequence to the action being litigated." McElroy's Alabama Evidence § 20.01. Cf. Wilson v.State, 551 So.2d 447, 448 (Ala.Cr.App. 1989) (where rape defendant presented alibi defense and denied having intercourse with victim, consent was not at issue and proffered testimony of defense witness who would have testified as to " 'the victim's desire for sex' with [the defendant]" was immaterial and properly excluded).
The objection at trial, while incorrectly asserting that drug analyst Adair's testimony in this regard was "irrelevant," vaguely alluded to the materiality aspect of this testimony, although not utilizing that specific term. However, we are not convinced that the objection at trial was sufficient to apprise the trial court that the appellant was challenging this testimony on the grounds of materiality.[1] "Objections must be stated with 'sufficient particularity' to apprise the trial court of 'the basis for the objection' so as to permit the trial court to make an informed decision 'on the particular legal issue involved.' " Robinson v. State, 574 So.2d 910,917-18 (Ala.Cr.App. 1990) (quoting Bland v. State,395 So.2d 164, 168 (Ala.Cr.App. 1981)). See also McElroy's AlabamaEvidence § 20.01 ("the party who contends that the evidence is irrelevant — i.e. that the evidence doesn't lead in logic to the purpose for which it is offered — may be argued to have waived any subsequently asserted immateriality objection based upon the assertion that the purpose is of no consequence to the action being litigated").
Furthermore, even if we deem the objection sufficient to bring the issue properly before this Court, we fail to see how, in this particular case, the appellant was harmed by this testimony. As we stated in Buchannon v. State, 554 So.2d 477,481 (Ala.Cr.App.), cert. denied, 554 So.2d 494 (Ala. 1989), overruled on other grounds, Pardue v. State, 571 So.2d 333
(Ala. 1990):
 "It is clear under Rule 45[, A.R.App.P.,] and [Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983),] that, in determining whether a particular error was harmless or prejudicial, this court is to review a defendant's trial as a whole, rather than to focus solely on the error involved. This review, of necessity, includes an evaluation of the evidence properly admitted against the defendant. 'An error that might be prejudicial in a close case does not require reversal when *Page 1044 
evidence of the defendant's guilt is strong.' "
In view of the uncontroverted evidence against the appellant in this case, we conclude that any error in the admission of drug analyst Adair's testimony concerning the derivation of crack cocaine was unquestionably harmless.
 II
The appellant was tried and convicted in CC-90-509 on May 8, 1991. Some two and one-half months later, on July 23, 1991, the appellant pleaded guilty in CC-90-508 and was immediately thereafter sentenced on both the jury conviction in CC-90-509 and the conviction on this plea. At the conclusion of the sentencing proceedings, trial counsel informed the trial judge that the appellant wished to appeal and requested that another attorney be appointed for that purpose. After the trial court orally appointed present appellate counsel to represent the appellant on appeal, trial counsel gave oral notice of appeal in both cases. R. 106-07. The trial court's written order appointing present appellate counsel indicates that a copy of that order was sent to appellate counsel on July 25, 1991. R. 132.
The record on appeal was filed with this Court on August 14, 1991. The appellant's brief was filed on September 6, 1991; the State's brief was filed on October 4, 1991; and the case was submitted on those briefs on October 7, 1991.
In his brief filed September 6, 1991, the appellant argued that his guilty plea in CC-90-508 was not voluntarily and intelligently made. However, it is well settled that "before an issue raising the validity of a guilty plea is cognizable in this court, the issue must be first presented to the trial court by timely objection, a motion to withdraw the guilty plea, or [a] motion for new trial." Willis v. State,500 So.2d 1324 (Ala.Cr.App. 1986). Accord Toles v. State, 572 So.2d 1325,1326 (Ala.Cr.App. 1990); Kirby v. State, 563 So.2d 56, 57
(Ala.Cr.App. 1990); Holcomb v. State, 519 So.2d 1378, 1379
(Ala.Cr.App. 1988). There was no timely objection to the entering of this guilty plea, and the appellant had not filed a motion to withdraw the plea or a motion for new trial prior to the submission of this case on appeal.
On October 8, 1991, the day after this appeal was submitted, the appellant filed in the trial court a "Motion for Court-Ordered Evaluation or Alternatively Motion to Withdraw Guilty Plea in CC-90-508." On October 17, 1991, the Dallas County District Attorney filed in the trial court a written objection to this motion, characterizing it as a "Johnny-come-lately motion." Supp.R. 13. However, on November 13, 1991, the appellant and the Dallas County District Attorney filed in this Court a "Joint Motion to Remand." In this motion, the parties request that the cause be remanded in order to afford the trial court an opportunity to rule on the appellant's post-trial motion.
Under Rule 13(a)(2), A.R.Crim.P.Temp. (now Rule 24.1(b), A.R.Crim.P.), "[a] motion for new trial must be filed no later than thirty (30) days after sentence is pronounced." Likewise, "[a] motion to withdraw [a] guilty plea must be filed no later than thirty days after imposition of the sentence." Ward v.State, 527 So.2d 780, 782 (Ala.Cr.App. 1988).[2] The appellant's motion to withdraw the plea was clearly untimely, not having been filed until almost *Page 1045 
three months after the pronouncement of sentence.[3] However, the District Attorney, who originally opposed this motion as untimely, now joins with the appellant in requesting this Court to remand this matter for the trial court's consideration of the motion. The Attorney General, who filed the State's brief on appeal, maintains that this issue is precluded.
In Ross v. State, 581 So.2d 495, 496 (Ala. 1991), the Alabama Supreme Court held that a "trial court has no jurisdiction to consider an issue raised in an untimely motion for new trial" and reversed this Court's decision to remand the cause for an evidentiary hearing on issues raised in an untimely motion for new trial. Here, the trial court had no jurisdiction to consider the motion to withdraw the guilty plea which was filed after the appeal of the convictions had already been submitted to the Court of Criminal Appeals. Subject matter jurisdiction cannot be conferred by agreement. International Longshoremen'sAssociation v. Davis, 470 So.2d 1215, 1217 (Ala. 1985), affirmed, 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986).
We note that the issue of the appellant's mental competency was raised before he was sentenced in case number CC-90-509 and before the acceptance of his guilty plea in case number CC-90-508. On that occasion, defense counsel represented that the appellant was "not the smartest person in the world, but I don't think he had any problem that would approach a legal defense." R. 96.
The appellant's convictions in case numbers CC-90-508 and CC-90-509 are affirmed.
AFFIRMED.
All Judges concur.
[1] Nor are we convinced from the argument in brief that appellant is actually addressing materiality on appeal, although there again appears to be an oblique reference to the subject. See Rule 45B, A.R.App.P. (in non-death penalty cases, "the Court of Criminal Appeals shall not be obligated to consider questions or issues not presented in briefs on appeal").
We are aware that Rule 401, Fed.R.Evid., which "merges the separate evidentiary concepts of materiality and relevancy" is being considered for adoption as part of the proposed Alabama Rules of Evidence. Advisory Committee's Notes, A.L.I. Alabama Rules of Evidence at 28 (Oct. 1991). However, the current case law of this state, by which we are bound, recognizes a distinction.
[2] While Temporary Rule 13 (now Rule 24) is entitled "Post-Trial Motions," it specifically refers only to motions for new trial and motions in arrest of judgment, requiring both to be filed within thirty days of the pronouncement of sentence. Temporary Rule 13(a)(2); Temporary Rule 13(b). In Pickron v. State,475 So.2d 599 (Ala. 1985), the Alabama Supreme Court affirmed this Court's holding in Pickron v. State, 475 So.2d 593 (Ala.Cr.App. 1984), that a motion to amend or correct a sentence, another post-trial motion, falls within the coverage of Rule 13 (now Rule 24, A.R.Crim.P.), even though such a motion is not within the specific language of the rule. Although we did not base our holding in Ward on Temporary Rule 13, it would appear from thePickron cases that a motion to withdraw a guilty plea also falls within the coverage of that rule inasmuch as it is, in effect, a "post-trial" motion. In fact, a motion to withdraw a guilty plea is the functional equivalent of a motion for new trial, and we see no reason to treat the two motions differently.
[3] We note that in Griffith v. State, 545 So.2d 236 (Ala. 1989), the defendant's motion to withdraw his pleas was filed more than two months after sentence was pronounced and was, nevertheless, considered and denied by the trial court after an evidentiary hearing, then was reviewed on appeal by this Court. The timeliness of the motion, however, was not an issue inGriffith, nor had an appeal been submitted in this Court prior to the filing of the motion to withdraw the plea. We therefore distinguish Griffith from the case at bar.
We also note that, in the brief filed September 6, 1991, appellate counsel intimated that the voluntariness of the plea could not have been challenged in the trial court because notice of appeal was given the same day the guilty plea was entered. However, it is abundantly clear that a motion for new trial, which is a viable method of challenging a guilty plea, may properly be filed after notice of appeal is given. Rule 4(b)(1), A.R.App.P., provides that "[w]hen notice of appeal is made or filed before the timely filing of a motion in arrest of judgment, motion for new trial, or motion for judgment of acquittal, or during the pendency of such a timely filed motion, the time for filing of the court reporter's transcript and the clerk's record shall be governed by Rule 11(b) and (c) as if the notice of appeal had been filed on the date of the overruling of such motion." (Emphasis added.)